HARDIE-TYNES FOUNDRY & MACHINE CO. *v.* GLEN ALLEN OIL MILL.

1. CONTRACTS. *Written and printed parts.   Presumption.   Construction.*
   It is to be presumed that the parties intended a contract to include all of its words and phrases, and this requires that the written and printed parts of an instrument should be reconciled, if it can be done.

2. SAME.   *The application of the rule.*
   Where a printed form provides for the delivery of an engine on "—— August, 1902, ——, unless delayed by strikes, fires, or manufacturing contingencies beyond our reasonable control," has added to it a written addendum stating, "It is understood that the above described engine will be shipped August 15, 1902; failing to do so (defendant) agrees to pay as forfeit five dollars per day for each day behind this time," the addendum should be read with the printed form as providing for the damage and exact date of shipment subject to the clause as to strikes, etc., contained in the printed form.

3. SAME.   *Penalty.   Liquidated damages.*
   A stipulation in a contract that in case of a failure to deliver an engine on a certain day defendant would "pay as forfeit five dollars per day for each day behind this time" was intended to provide for liquidated damages and was not designed as a penalty.

FROM the circuit court of Washington county.

HON. A. McC. KIMBROUGH, Judge.

The Glen Allen Oil Mill, appellee, was plaintiff in the court below; the Hardie-Tynes Foundry & Machine Co., appellant, was defendant there.    Both parties were corporations.    From a judgment in plaintiff's favor defendant appealed to the supreme court.    The facts are stated in the opinion of the court.

*Jayne & Watson,* for appellant.

A cardinal rule for the interpretation of contracts is that the intention of the parties must govern.    While it is true that the words of the contract are to be considered in determining the intent of the parties, it is also true that the circumstances surrounding the parties at the time are to be considered in interpreting the words used in the contract.    The written words, "It is understood that the above described engine will be shipped August 15, 1902, and failing to do so, Hardie-Tynes Foundry & Machine Co. agrees to pay as forfeit $5.00 a day for every day behind this time," were not intended to annul that part of the contract embraced in the first paragraph or clause whereby it is agreed, "That the engine should be shipped in August, 1902, unless delayed by strikes, fires or manufacturing contingencies beyond our reasonable control."

The whole of the contract should be taken together in order to get at the true intention of the provision; and if one part be irreconcilable with another upon any reasonable construction, it ought nevertheless to aid in the consideration of the whole, though apparently inconsistent.    2 Parsons on Contracts [9th ed.], sec. 3, star paging 500 and star paging 491; 10 Pickering, 228.

It is a cardinal rule of the interpretation of mutual contracts, that one part is not to be abrogated or impaired by another when that other has one separate meaning and fully satisfies the words.    We do not dispute the rule that where there is

an irreconcilable conflict in a contract between a written and a printed part, that the writing will govern, but to invoke this rule the court must be satisfied what the intentions of the parties were, and the language must be such as to compel the court to assume that the written, part was intended to abrogate the printed part, and the printed part must be irreconcilable with the written part. 1 Beach, Modern Law of Contracts, 728; 99 Penn., 171.

The parties agreed upon the $5.00 per day as a penalty. The court will, where there is doubt, construe a sum payable for breach of contract as a penalty rather than liquidated damages. *Lansing* v. *Dodd,* 45 N. J. L., 525; *Foley* v. *McKegan,* 4 Iowa, 1; 3 Parsons on Contracts [9th ed.], star paging 156, *et seq.;* 91 Ill., 609; 109 Ind., 564.

*Percy & Campbell,* for appellee.

Where a contract is partly printed and partly written, and the printed part and the written part are in such conflict as not to be reconciled by any reasonable construction, the written part will prevail. 17 Am. & Eng. Ency. Law, 21; *Summers* v. *Hibbard,* 46 Am. St. Rep., 872; *Insurance Co.* v. *Van Os & Shuster,* 63 Miss., 431.

The first clause of the contract in question, which is printed, and the addendum thereto, which is written, present such a conflict.

The amount fixed in the contract to be paid by appellant for each day's delay in the shipment of the engine was properly construed by the court as liquidated damages, and not as a penalty.

It is competent for the parties, in making a contract, to fix therein the amount of damages to be paid upon breach thereof; and where the damages are in their nature indefinite and uncertain, and the parties have mentioned a specific sum as the damages to be paid in case of a breach of the contract, and the same is not greatly disproportioned to any probable estimate of

the actual damages, the same will be construed as liquidated damages, and not as a penalty.

In considering whether a stipulation to pay a sum of money on a breach of contract is to be treated as a penalty or as liquidated damages, the test appears to be whether the loss which will accrue from an infringement of the contract can or cannot be accurately or reasonably calculated in money, antecedently to the breach. 1 Beach on the Modern Law of Contracts, 624–629; 19 Am. & Eng. Ency. Law, 400–412; 1 Pomeroy's Eq. Jur., secs. 441, 445; *Monmouth Park Assn.* v. *Wallace Iron Works,* 39 Am. St. Rep., 626; 1 Beach on the Modern Law of Contracts, sec. 624, note 6.


CALHOON, J., delivered the opinion of the court.

The declaration of the oil mill claims five dollars per diem as liquidated damages under an alleged contract to pay that sum on failure of appellant to ship a Corliss engine, etc., on August 15, 1902, for every day the shipment was delayed beyond that time. The proposition of the company, accepted by the oil mill May 22, 1902, and thus becoming a contract on its face complete, is on a printed blank, the spaces filled in with writing, and begins thus: "We propose to make and deliver —— F. O. B. —— August —, 1902, ——, unless delayed by strikes, fires or manufacturing contingencies beyond our reasonable control," the engine, etc., describing the subjects of the manufacture. This proposition is signed in print by the company, "by [in writing] James Hunter Smith," and it is accepted in writing by the oil mill, signed "R. V. Garner, chairman; P. L. Mann, president; Charles McGinnis." This contract is followed in typewriting by attached specifications of the work to be done, more elaborate than appear in the accepted proposition. At the end of these are typewritten specifications, which are also in the shape of a proposition, and which provide that the oil mill should prepare the foundation, and that the company should furnish a mechanic to erect, if desired, at

certain wages, etc., and they conclude thus, in typewriting: "Price and terms to be in accordance with our printed contract herewith attached and made a part of these specifications. Respectfully submitted, Hardie-Tynes Foundry & Machine Co." Immediately under this we find, in manuscript, this, "It is understood that the above described engine will be shipped August 15, 1902; failing to do so, Hardie-Tynes Foundry & Machine Co. agrees to pay as forfeit five dollars per day for every day behind this time," and this addendum is signed "Jas. Hunter Smith." To the declaration a notice under the general issue was filed, setting up the defenses that the delay in shipment was occasioned by strikes, and that no damage was caused by the delay because the oil mill was not in condition to use it because of unpreparedness with necessary things for its erection and operation, until after it actually arrived on the ground. The court refused to permit the company to prove these defenses, and gave a peremptory instruction to the jury to find for the plaintiff, and thus two questions are evolved for our consideration—viz.: (1) Is the manuscript addition at the foot of the signed typewritten proposition independent of and uncontrolled by the reservation as to strikes, etc., in the proposition first signed and accepted? (2) Is the agreement in the manuscript addition, "to pay as forfeit five dollars per day," an agreement for liquidated damages, or for a penalty as a limit to protect against losses actually caused by the delay?

We answer the first question in the negative. The rule is universal that, "if the written and printed matter can possibly be reconciled, this will be done, it being presumed that the instrument contains no clauses not intended by the parties." 17 Am. & Eng. Ency. Law, 21. Here the original paper was to ship "—— August —, 1902, ——, unless delayed by strikes," etc., and the written addendum simply fixes a date in August, and provides for damages per diem for delay in shipment; and we think it should be read as providing for the damages in

addition to the first proposed contract, and for the exact day of shipment, all subject to the clause "unless delayed by strikes," etc.

In answer to the second question, we think the "five dollars per day" means liquidated damages, and was not designed as a penalty, notwithstanding the words "to pay as forfeit." 3 Parsons on Contracts, 157, *et seq.;* 1 Sutherland on Damages, sec. 283, p. 716. In the latter author is found a very elaborate consideration of the shades of adjudication on the question. The decisions are numerous and various in views, and we will not protract this opinion in their discussion.

*Reversed and remanded.*