## R. B. TYLER CO. *v.* LAUREL EQUIPMENT CO.

(Division A. Jan. 2, 1940. Suggestion of Error Overruled Feb. 12, 1940.)

[192 So. 573. No. 33833.]

**Paul B. Johnson**, of Hattiesburg, and **Jeff Collins**, of Laurel, for appellant.

Welch & Cooper, of Laurel, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant at the times mentioned herein was a general road contractor, and appellee was a dealer in motor trucks. Appellant had a contract with the State Highway Commission to do certain road work at McLain, in Greene County, among which was the hauling of what was estimated to be about 52,000 yards of sand. Appel-

lant had made an arrangement with one J. J. Broome to perform this particular work, but Broome had no motor trucks with which to do it, nor any money with which to buy them, although he had arranged to borrow from a friend $800 with which to make the first or down payment on the necessary trucks and equipment.

In order to aid Broome in obtaining the trucks, appellant gave him the following letter:

"McLain, Miss. June 19, 1937

"To Whom It May Concern:

"We, R. B. Tyler Co. have approximately fifty two thousand yards of sand to put on our project in McLain, Miss. We figure this between sixty and ninety days work for approximately ten trucks. Furthermore, we are willing to pay fifty per cent of the amount due the party furnishing, to the party selling the trucks, and the other fifty per cent to the party furnishing the trucks.

"R. B. Tyler Co.

"Per: J. B. Carrington."

With this letter in his hands Broome went to appellee, who, relying on the letter, made a contract with Broome, dated June 24, 1937, by which contract appellee agreed to sell to Broome, with delivery on or about June 26, 1937, eight used motor trucks, together with some additional motor truck equipment, the purchase price aggregating $3,875, on which Broome paid the $800 already mentioned, and gave a series of weekly installment notes due from and including July 3, 1937, down to and including October 16, 1937.

After the delivery date of the trucks, as mentioned in the sales contract, Broome gave to appellee the following formal assignment:

"Laurel, Mississippi, June 29, 1937

"R. B. Tyler Company,

"McLean, Mississippi.

"Gentlemen:

"I hereby assign to Laurel Equipment Company 50% of my weekly gross earnings until my indebtedness to

them and to the Mississippi Truck Equipment Company for 8 used trucks and new hydraulic dump bodies has been entirely discharged.

"This is in accordance with your letter of June 19th signed by Mr. Carrington.

"Yours truly,

"J. J. Broome."

This assignment was sent down to McLain, after seven of the trucks had been delivered to Broome, and had been put to work, the testimony of appellee's general manager being that the assignment went down about the time the last truck was taken down there. When the assignment reached the office of appellant at McLain, it was endorsed at the bottom: "Accepted, J. B. Carrington."

No person was introduced as a witness who testified as to the terms of the contract between appellant and Broome. Apparently, it was not in writing. What was actually done by them, however, was that appellant at the end of each week paid all the payrolls of Broome for his truck drivers and other help; paid for the gasoline and oil used in operating the trucks; paid for the repairs thereon, and deducted this from the total truck time for the week, and thereupon paid the entire balance to appellee, the Laurel Equipment Company. We must assume that the terms of the contract between appellant and Broome provided for this course of procedure; for what the parties to a contract consistently do thereunder throughout is evidence, indeed is often the best evidence, of what the contract between them required that they should do. And besides this, the proof discloses that appellee knew, or had knowledge sufficient to put it on notice, that Broome was without means to pay these necessary operation expenses except out of the current proceeds of the contract, and that without its being handled in the manner stated Broome could not have done the work at all.

The gross amount of the so-called truck time earned under the contract was $5,126.27. The total amount due

Broome, after deducting the amounts paid for labor, oil, gasoline, repairs, etc., was $1,638.13, which latter amount, as already stated, was paid over in full to appellee. But appellee insisted that it should receive one half of the gross amount, or $2,578.13, it being the contention of appellee that the quoted letter of June 19th meant this, or if mistaken in that contention, then the quoted assignment of June 29th did expressly so state. Broome failed to pay the balance due on the trucks, appellee repossessed them under its retention of title contract, sold them at public sale, credited Broome with the proceeds; and the remainder of the debt being in excess of the difference between $2,578.13 and $1,638.13, appellee sued appellant for that difference and recovered in the trial court.

We do not agree that the letter of June 19th is properly to be interpreted as promising to pay to the seller of the trucks one half the gross proceeds of the work. The letter stated that appellant would pay to the party selling fifty per cent of the amount due the party furnishing them. Broome was the party who was furnishing the trucks; appellee was the party who was selling them to him. And we have already shown that the amount due Broome under the contract was subject to the deduction, before being due at all, of what was paid out by appellant for labor, gasoline, oil repairs, etc.

This leaves to be considered what were the rights of appellee under the assignment of June 29th.

We think the rule must be accepted as well settled under the authorities, that, so far as the assignment itself is concerned, one to whom a contractual right is assigned, takes such right subject to the burden of the provisions of the contract by which, and under which only, the assigned right would accrue to the assignor, or as otherwise some times expressed, the assignee is bound by the term of the contract to the same extent as the assignor. 4 Am. Jur. pp. 234, 235, 311, 312. The assignment of a contractual right confers only the right which the assignor has therein, and no more. 6 C. J. 5, p. 1156.

All this is upon the obvious proposition that a party may not transfer to another something which the transferrer does not own or to which he has himself no ultimate right.

In fact, a right under a contract may not be assigned at all if the substitution of a right of the assignee for the right of the assignor would (1) vary materially the duty of the obligor, or (2) increase materially the burden or risk imposed upon him by his contract, or (3) impair materially his chance of obtaining return performance. Section 151, A. L. I. Rest. Contracts. From which it follows that to uphold an assignment as valid it must be construed so as not do any of the three things next above mentioned.

The above statements of the rule may have simple illustrations. Thus where the contract between a railway company and its employee provided that the company might deduct from the wages of the employee any sums paid out by the company for board, meals and lodging of the employee, the right of the company to deduct such payments is upheld as against an assignee of the employer's wages. Steltzer v. Chicago, etc., R. Co., 156 Iowa 1, 134 N. W. 573, L. R. A. 1915E, 1017. Or we may take an every-day illustration. An owner contracts with a builder for what is commonly called a lock and key job in the building of a residence, the gross contract price to be $3,000 on completion; but the contract provides also that the owner shall pay or advance the weekly payroll of the carpenters and laborers employed in the work during its progress. There the owner would be entitled to deduct the payments so made by him, as against an assignee of the contractor, although the latter had attempted to assign the entire gross contract sum of $3,000.

Nor does the acceptance of the assignment aid appellee under the facts here presented. The acceptance of the assignment by the obligor in the simple terms used in this case does not of itself create a new debt between him and the assignee, Carozza v. Boxley, 4 Cir., 203 F. 673, 122 C. C. A. 69; and with no more in the facts than a formal

acceptance, the rights of the assignee in the proceeds of a contract are still limited to the rights which the assignor had in those proceeds. 6 C. J. S., Assignments, Sec. 100, pages 1156, 1157. If, however, in the case before us, the assignee, first before making the sale and delivering the trucks to the assignor, had obtained the acceptance of the obligor to pay the assignee one half the gross proceeds of the contract—had the assignee in making the sale and deliveries acted in reliance upon the acceptance of the assignment rather than upon the assignment itself. —a different question would be presented; but the evidence shows that the sale and deliveries were made to the assignor before the acceptance, appellee's chief witness having testified, as already stated, that the last of the several trucks went down about the time the assignment was sent down. Reliance not having been placed on the acceptance and delivery having been made before the acceptance, the legal effect of the acceptance was but an acknowledgment of notice of the assignment, and created no new or independent obligation.

In fact, appellee expressly averred in its bill, and the proof shows that it relied on the letter of appellant, dated June 19th, in making its sale of the trucks and equipment to Broome and on its insistence that the letter implied by its terms that the payments made by appellant to the seller of the trucks would be fifty per cent of the gross proceeds of the work, and interpretation which we have rejected. Appellee does not mention in its bill that in making the sale and delivery of the trucks and equipment to Broome, it relied on appellant's formal acceptance of the assignment; and if it had so averred the proof would not sustain that averment.

Applying the pertinent rules of law to the facts disclosed by the record, we are of the opinion that appellee was not entitled to recover anything of appellant, and that the bill should have been dismissed.

Reversed, and decree here for appellant.