GOLDBERG *v.* L. H. REALTY CORPORATION

No. 40043          March 26, 1956          86 So. 2d 326

*Snow & Covington,* Meridian, for appellant.

*Floyd, Cameron & Deen,* Meridian, for appellee.

Kyle, J.

The L. H. Realty Corporation, plaintiff in the court below, recovered a judgment against Max Goldberg, defendant in the court below, for the sum of $1,500 as rent due and unpaid for the months of October, November and December 1954, for the use of leased premises in the City of Meridian owned by the realty company and occupied by Max Goldberg during the 3-months period. From that judgment Max Goldberg has prosecuted this appeal.

The case was tried before a jury, and only two witnesses testified. Max Goldberg was called as a witness by the plaintiff for the purpose of cross-examination, and in like manner Lewis Grinthal, secretary of the realty corporation, was called to testify as an adverse witness by the defendant. There is no substantial conflict in the testimony. The record shows that Max Goldberg's son, Samuel P. Goldberg who is referred to in the record as "Sammy", came to Meridian in 1939 and opened a jewelry store, known as "Samuel's Jewelry Store." In 1940 or 1941 Sammy was called for service in the Navy, and his father who was living in New Orleans at that time came to Meridian to take charge of the store. Max ran the store during Sammy's absence, and the profits were retained in the business as operating capital. Sammy returned from the Navy in 1946 and took over the management of the business. Max remained in Meridian, and Sammy and Max continued to operate the business until January, 1951, when Sammy sold his interest in the business to his father and left Meridian.

The contract of sale and of purchase entered into by and between Samuel and Max on January 17, 1951, recited that Samuel's was a partnership and that Samuel owned a three-fourths interest and Max a one-fourth interest in the partnership business. The contract then recited that "Samuel Goldberg hereby sells, conveys and warrants his interest in the said partnership business, and all the assets thereof, to Max Goldberg for the sum of Twenty-Five Thousand & No/100 Dollars ($25,000.00) * * *." The contract contained the following provisions with reference to the lease on the premises occupied by the partnership at the time of Saumel's withdrawal:

"Samuel Goldberg has a lease on the space now occupied by the business of the partnership, said space being No. 2203-5th Street, Meridian, Mississippi. He agrees to and hereby subleases the said space, on a from month to month basis, to Max Goldberg, sub-

lease to be for such period of the remaining period of time for which said lease runs as Max Goldberg shall elect to pay rent therefor, and rental to be paid by Max Goldberg under lease shall be on basis as stated in the said original lease.''

The lease referred to in the contract of sale and of purchase was a 10-year lease of the premises obtained by Samuel from the L. H. Realty Corporation in 1947. The lease agreement, which was dated November 21, 1947, and was signed by the L. H. Realty Corporation, as lessor, and Samuel P. Goldberg, as lessee, provided that the term was to commence November 1, 1948, and to end August 31, 1958, and the agreement provided for the payment of a yearly rental of Six Thousand Dollars ($6,000), ''payable in lawful money of the United States at the office of the lessor or to the lessor's duly authorized agent, in equal monthly installments of Five Hundred Dollars ($500) in advance on the first day of each and every month during said term.''

After his purchase of Samuel's interest in the partnership business, Max continued to operate the jewelry store under the trade name of ''Samuel's Jewelry Store'' and paid the rent due each month directly to the L. H. Realty Corporation in New York. On February 23, 1954, Max wrote a letter to the realty company asking for a reduction in his rent, and in that letter Max said, ''I would appreciate it very much if you would reduce my rent. Since the jewelry business has taken a decided turn for the worse, I hardly collect enough in the store to pay expenses.'' The realty company made no reply to that letter. On October 4, 1953, a fire broke out in the building occupied by the jewelry store, and a considerable amount of damage was done to Max's stock of goods. The damage, however, was mainly smoke damage, and during the latter part of the month Max advertised a fire sale of his stock of goods, and later an auction sale. The sales were made during the months of October, November and December. On November 19

Max wrote a letter to the realty company, in which he stated that the money which he had collected on his insurance policies was not for damage to the building of the realty company, but it was insurance which he carried on his stock of goods and fixtures; and Max concluded his letter with the following statement: "I will have the damaged stock out of the building by the first of the year, and so that the contractor may then proceed." Max refused to pay the rent for the months of October, November and December, and vacated the premises early in the new year. On February 10, 1955, the realty company formally notified Max and Samuel that the lease contract was terminated.

Max admitted during the trial that he was in possession of the premises during the months of October, November and December, 1954, and was running a fire sale and an auction sale. He was asked why he thought he was not obligated to pay rent for those three months. His answer was, "Well, after a fire I think that I am not entitled to pay rent."

At the conclusion of the evidence each of the parties moved for a directed verdict. The trial judge sustained the plaintiff's motion for a directed verdict and entered judgment against the defendant for the amount sued for. The defendant filed a motion for a new trial, and the motion was overruled.

The appellant's attorneys argue only one point as ground for reversal on this appeal, and that is, that the court erred in directing a verdict for the plaintiff and in refusing to direct a verdict for the defendant.

It is the appellant's contention that his relation to the leased premises after his purchase of Samuel's interest in the business was that of a sublessee under Samuel and that he incurred no liability whatever for the payment of rent to the realty company because of the subletting of the premises to him by the lessee named in the lease agreement dated November 21, 1947. And

the appellant cites in support of his contention the following statement of the text writer in 32 Am. Jur., p. 342: ''Between a sublessee and the original lessor, there is no privity either of contract or of estate. Consequently, the sublessee incurs no liability directly to the lessor merely because of the subletting either for the payment of rent reserved in the original lease or for the performance of the other covenants on the part of the lessee.''

But we think there was no error in the action of the trial judge in directing a verdict in favor of the plaintiff and in refusing to direct a verdict for the defendant.

█ █ It is true of course that at common law there is no privity of contract between a sublessee and the original lessor, and in the absence of statute or an assumption of the lease or liability under the lease by the sublessee, the original lessor can maintain no action against the sublessee for recovery of rent. It is also true that the sublessee incurs no liability to the lessor merely because of the subletting, either for the payment of rent reserved in the original lease or for the performance of the other covenants on the part of the lessee. But the lessor and the sublessee may establish between themselves the relation of landlord and tenant by express agreement or by some affirmative action showing an election to treat the sublessee as the lessor's tenant; and where the sublessee has assumed the obligation to pay the rent as stipulated in the original lease, the lessor may have a right of action under our statute against the sublessee for a breach of such obligation.

Section 900, Code of 1942, provides that, ''A person having rent in arrears or due upon any lease or demise of lands for life or lives, for years, at will, or otherwise, may bring an action for such arrears of rent against the person who ought to have paid the same or his legal representative.''

█ █ By the terms of the agreement entered into between Max and Samuel on January 17, 1951, Samuel

agreed to sublease the space occupied by the jewelry store to Max on a month to month basis for such portion of the remaining period of time during which the realty company's lease was to run as Max should elect to pay rent therefor, and it was expressly stipulated that the rental to be paid by Max under the lease should be on the basis as stated in the original lease.

We think it is clear from the provisions of the agreement that Max agreed to take Samuel's place under the lease contract with the realty company as the tenant of the realty company and to pay the rent to the realty company for such length of time as Max should continue to occupy the leased premises under the lease contract. But if there were any doubt as to the meaning of the language used in the contract of sale and of purchase such doubt would be removed by the testimony which shows what the parties did themselves under the contract.

The rule is well-settled that where a contract is ambiguous, the court may look to the construction which the parties have placed upon it in order to ascertain its true meaning. Spengler v. Stiles-Tull Lumber Co., 94 Miss. 780, 48 So. 966. What the parties to a contract consistently do thereunder is evidence, indeed is often the best evidence, of what the contract between them required that they should do. R. B. Tyler Co. v. Laurel Equipment Co., 187 Miss. 590, 192 So. 573.

The record in this case shows that Max paid the monthly rental stipulated for in the original lease directly to the realty company each month after the date of his purchase of Samuel's interest in the jewelry store, until October 1954. Max paid no rent to Samuel during the four years that he occupied the leased premises after his purchase of Samuel's interest; and when the jewelry business took a turn for the worse, in February 1954, and Max wished to have his rent reduced, he made no appeal to Samuel to reduce the rent that he was required to pay, but he wrote a letter to the realty company asking

that the realty company reduce his rent. We think it is clear that Max and Samuel understood and intended when they executed the contract of sale.and of purchase, that Max should assume the obligation and become liable for the payment of the rent which was to become due during the period of time that he occupied the premises. The realty company therefore had a right under Section 900, Code of 1942, to bring an action for the rents in arrears against Max as ''the person who ought to have paid the same.''

The facts in this case are very similar to the facts in the case of Foucar v. Holberg, 85 Ark. 59, 107 S.W. 172, wherein the court held that where the defendant agreed with a tenant to take his place under a lease and to pay the rent to the lessor, the agreement inured to the lessor's benefit, and she could sue defendant for accrued rent, regardless of whether he was an assignee of the lease or a sublessee of the original tenant. See also Hartman Ranch Co. v. Associated Oil Co., 10 Cal. 2d 232, 73 P. 2d 1163.

We find no error in the record and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P.J., Hall, Lee* and *Holmes, JJ.,* concur.