**CONTINENTAL GIN COMPANY,**
Plaintiff,

v.

**John H. FREEMAN, Jr., d/b/a Freeman Electric Gin Company, Defendant.**

**No. GC6415.**

United States District Court
N. D. Mississippi,
Greenville Division.

Dec. 30, 1964.

Charles Clark, Cox, Dunn & Clark, Jackson, Miss., Cohen, Kohler & Barnwell, Atlanta, Ga., for plaintiffs.

John C. Satterfield, Yazoo City, Miss., Norman Brewer, Jr., Greenwood, Miss., Dudley Buford, Jackson, Miss., for defendant.

CLAYTON, District Judge.

This diversity suit [1] is before the court on a complaint in two counts, answer and counterclaim, plaintiff's motion for judgment on the pleadings, or, in the alternative for summary judgment, defendant's motion for summary judgment, certain affidavits, discovery deposition of John H. Freeman and briefs of the parties. Since matters outside the pleadings, which affect disposition of all motions, have been considered, all the motions will be considered as motions for summary judgment. Rule 12(c), Federal Rules of Civil Procedure.

## I.

Count I of the complaint is on a written contract to recover the unpaid purchase price for certain cotton ginning machinery and related equipment bought by defendant from plaintiff. Material facts with respect to this contract are not in dispute. After conferences between representatives of plaintiff and John H. Freeman, he signed a printed form contract on July 4,[2] 1962. It was filled out before signing except for the list of the property being sold by plaintiff and bought by defendant and the list of property being "traded in" thereon by defendant. A list of the property being bought had been previously prepared and was examined by plaintiff's representatives and by Freeman at the place where he signed the contract. Everyone there understood that this list showed the property which was being purchased by defendant and which was the subject of the contract which was signed by Freeman. This contract was sent to plaintiff, the list of property being purchased by defendant was inserted therein [3] and the contract was formally accepted July 26, 1962, with modifications shown by plaintiff's letter of that date to defendant by which defendant's copy of the contract was returned.

Substantially all of the property listed in the contract was delivered by plaintiff to defendant between July 31 and August 24, 1962, but some miscellaneous items were not received by defendant until September 1962.

By mutual agreement a change order dated August 10, 1962, was issued by plaintiff which added one additional piece of equipment to defendant's purchase at a price of $850, making the revised net purchase price amount to $87,909 and making minor revisions in the due dates of defendant's notes to cover payment and the amounts thereof. Added to this are the amounts of $879.09 for Mississippi sales (use) tax and $220 for freight, making the total basic debt amount to $89,008.09.

In essence, the defense offered by the answer and in defendant's brief is that there was a collateral oral agreement by which plaintiff contracted to prepare engineering drawings and to install the machinery, except for the cost of labor, and that plaintiff breached these contracts with late delivery, furnishing faulty machinery which was improperly designed, improper order of delivery, improper installation, failure of the machinery as installed to operate properly, and failure of plaintiff to remedy defects.

It is beyond question that all of the discussions upon which defendant relies to establish the collateral agreement or contract took place before the printed form contract was signed by John H. Freeman on July 4, 1962. Clearly the terms and conditions of that agreement as they are contended for by defendant are inconsistent with the plain, unambiguous language of the printed form contract and other writings aforementioned. The printed form contract clearly provides only for the purchase by defendant and sale by plaintiff of certain cotton ginning machinery and the shipment by plaintiff

---

1. State law applies. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. The contract was dated July 3, 1962, because neither Freeman nor plaintiff's representatives knew what effect signing it on a holiday might have.

3. The list of property being "traded in" was also inserted. There is no controversy of any sort about this.

to defendant between July 20 and August 1, 1962, or as soon thereafter as possible. By its terms, the price was fixed F.O.B. factories and defendant undertook to receive the property promptly on arrival and pay the freight and charges on same.

It is proper also to note, with respect to erection or installation of the machinery, the printed form contract provided as follows:

> It is understood that if the purchaser desires to employ a contractor to superintend the erection of said machinery, the seller will see to it that the purchaser is offered an opportunity to employ a contractor for a sum of not to exceed $4.00 per manhour. The purchaser agrees to pay the contractor for time from starting point to the place of erection and return, and also to pay all traveling and other expenses of contractor or contractor's employees from starting point to place of erection and return. Purchaser agrees to furnish contractor with any help contractor may need and to furnish any additional materials needed and not covered by the terms of this contract so as to complete the erection of the machinery with dispatch. Should the purchaser employ a contractor recommended by the seller it is expressly understood and agreed that the contractor is an independent contractor and not an agent or employee of the seller, and the seller shall not be liable under any circumstances to the purchaser for the work of the contractor nor shall the seller be liable to the purchaser if seller is not able to find a contractor to recommend to the purchaser.

With respect to any delay in shipment of any of this property by plaintiff, the contract provided as follows:

> It is understood that the seller is not to be responsible for any delay in shipping said machinery or articles that may be due to strikes, accidents or any other cause whatsoever, except that resulting from its own or

employee's negligence, and *in case of delay on account of such negligence, the reasonable rental value of the machinery or articles for the time of such delay shall be liquidated damages therefor.* (Emphasis added.)

A paragraph of the printed form contract also negatives the existence of any collateral oral agreement and refers to the warranty obligations of plaintiff as being printed on the back of that contract. This paragraph reads:

> *When this order is accepted by the seller, it is understood and agreed that same, together with the warranty on the back hereof, which the purchaser expressly declares that he has read and understands, shall be and constitute the entire contract between the purchaser and the seller, and that no agreement, verbal or otherwise, other than as set forth herein, forms any part of this contract.* (Emphasis added.)

In the printed contract form dealing with warranty, the provision is as follows:

> Seller's obligation under this warranty and purchaser's rights and remedies thereunder are, however, conditioned and limited as follows:

There are then three following paragraphs designated "(a)", "(b)", and "(c)", providing for the return of any parts claimed to be defective in workmanship or material and for the repair or replacement of the part if the same is found to be defective. An alternative remedy is provided whereby the purchaser may give notice of a claimed defect in property subject to this warranty and the seller may send an agent to examine the claimed defect, and if it is found defective, to remedy the defect. It appears without conflict that defendant called on plaintiff under these terms of this contract and that plaintiff complied with all of its duties with respect thereto.

It is also without conflict that defendant never asserted any claim against plaintiff under this contract for any delay in the shipment of any of this property

before this suit was filed. As aforementioned, any such claim would necessarily have to be predicated on negligence on the part of plaintiff and the contract liquidated damages for any such delay would be "the reasonable rental value of the machinery or articles for the time of such delay."

It also is without dispute that none of the remaining purchase price of $89,008.-09 has been paid by defendant to plaintiff.

Defendant did not call on plaintiff to put defendant in touch with an erector as provided by the contract, although in plaintiff's letter of July 26, 1962, defendant was specifically asked to contact plaintiff's Memphis office in the event the services of an erector would be required to superintend the installation of this machinery, in accordance with the clause in the contract pertaining to erectors.

In these circumstances, defendant's reliance on such authorities as New York Life Insurance Co. v. O'Dom, 100 Miss. 219, 56 So. 379 (1911); Valley Mills Div. of Merchants Co. v. Southeastern Hatcheries of Mississippi, Inc., 254 Miss. 71, 145 So.2d 698 (1962); Chism v. Omlie, 239 Miss. 576, 124 So.2d 286 (1960); Producers Gin Ass'n (AAL) v. Beck, 215 Miss. 263, 60 So.2d 642 (1952); Goldberg v. L. H. Realty Corp., 227 Miss. 345, 86 So.2d 326 (1956); and Dale v. Case, 217 Miss. 298, 64 So.2d 344, 37 A.L.R.2d 811 (1953) and on the other authorities cited is misplaced. The exceptions to the parol evidence rule and the conditions upon which a collateral or independent oral contract may be made by parties who have contracted in writing as illustrated by those cases and authorities simply do not exist here. The language of the contracting documents now before this court are clear and unambiguous. Hence, any discussions or negotiations leading up to their execution by the parties would be merged into and extinguished by them. And, any oral contract by these parties made after the execution of these written documents or collaterally thereto would necessarily have to be supported by a sufficient consideration and mutual advantages or obligations. It would have to be bilateral in benefit or burden. This is not the case here. Defendant does not claim or contend that the situation as shown by this record between these parties meets these requirements.

The defense asserted by defendant against these written contract documents simply is an effort to convert a simple contract of sale by plaintiff and purchase by defendant into a contract of sale and erection or installation by plaintiff without any additional consideration flowing to plaintiff as a result of such conversion. This just will not do under the settled law of this state.

The parol evidence rule in Mississippi is not merely a rule of evidence or procedure, but is a rule of substantive law. Edrington v. Stephens, 148 Miss. 583, 114 So. 387 (1927); Fuqua v. Mills, 221 Miss. 436, 73 So.2d 113, 118 (1954), *suggestion of error overruled,* 73 So.2d 928; Restatement, Contracts § 447; and 32A C.J.S. Evidence § 851.

Throughout the years this rule has found uniform and strong application in the case law of this state. One of the earliest cases is Cole v. Hundley, 8 Smedes & M. (16 Miss.) 473 (1847). The rule is not rendered inapplicable by such matters as a misunderstanding of the parties as to the meaning of the writing, Divelbiss v. Jones, 164 Miss. 111, 144 So. 464 (1932); or parol acts of agents in promising other or added considerations, Perrault v. White Sewing Machine Co., 157 Miss. 167, 127 So. 271 (1930); or by carelessness or oversight of the parties, Kendrick v. Robertson, 145 Miss. 585, 111 So. 99 (1927).

A written contractual undertaking such as the one here raises the presumption that the whole contract was embodied in the writing. Bank of Lena v. Slay, 176 Miss. 825, 170 So. 635 (1936). The rule is well stated in 32A C.J.S. Evidence § 901, as follows:

The most usual application of the parol evidence rule is with respect

to contracts, as to which it is established that, with certain exceptions, . . . such as fraud, accident, mistake, or ambiguity, parol or extrinsic evidence is not admissible to vary, add to, modify, or contradict the terms or provisions of the written instrument, by showing the intentions of the parties, or their real agreement with reference to the subject matter, to have been different from what is expressed in the writing.

Where the parties have deliberately put their engagement into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of their agreement, all previous or contemporaneous negotiations and agreements with reference to the subject matter are, or are presumed or considered to have been, merged in, or superseded by, the written contract, and the whole engagement of the parties and the extent of their undertaking is . . . prima facie presumed, to have been reduced to writing. In such cases, the writing is regarded as the only evidence of the agreement.

Other cases consistent with the foregoing are Parker v. McCaskey Register Co., 177 Miss. 347, 171 So. 337 (1936); Grenada Auto Co. v. Waldrop, 188 Miss. 468, 95 So. 491 (1940); King v. Ainsworth, 225 Miss. 248, 83 So.2d 97 (1955); and Stribling Brothers Machinery Co. v. Girod Co., 239 Miss. 488, 124 So.2d 289 (1960). Nothing in the authorities cited by defendant is inconsistent with what has been said. For example, in Chism v. Omlie, supra, there the basic document left open by reference parol evidence to establish detail intentionally left out. See also South Florida Lumber Mills v. Breauchaud, 51 F.2d 490 (5th Cir. 1931), cert. den., 284 U.S. 659, 52 S.Ct. 37, 76 L.Ed. 558. In connection with what has previously been said about a claimed oral agreement which occurred after the execution of the contract documents, defendant is foreclosed on that point by the rule as announced in Memphis Automatic Music Co. v. Chadwick, 164 Miss. 635, 146 So. 137 (1933). This was a suit to collect the balance of the purchase price of a piano sold by plaintiff to defendant. The defense offered consisted of proof of breach of oral representations as to the quality of the piano and proof of a subsequent oral agreement whereby the seller would make repairs and adjustments which would either render the piano satisfactory or by which it could be returned, with the balance of the indebtedness to be cancelled. Return had been tendered. On appeal, after holding the claim of breach of warranty to have been waived, the court stated:

The only remaining question is whether or not the alleged oral agreement of November 16, 1930, was one supported by sufficient consideration to render it enforceable. The only consideration sought to be proved to support this oral agreement was the payment of two notes past due under the terms of the original contract, and which the appellees were obligated to pay. The proof in the record shows that, at the time of the making of this alleged oral contract, the appellees had no defense to the two notes which were paid; but, on the contrary, it shows that they were then valid, subsisting, and past-due obligations of the appellees; and payment of these past-due contractual obligations constituted no consideration for the alleged oral contract. Hunt v. Knox, 34 Miss. 655; Bell v. Oates, 97 Miss. 790, 53 So. 491. *The evidence offered by the appellees affirmatively shows a lack of consideration for the oral contract upon which they relied in defense of the suit.* Consequently, the peremptory instruction requested by the appellant should have been granted, and the judgment of the court below will, therefore, be reversed, and judgment will be entered here for the appellant. (Emphasis added.)

■ As has been mentioned, the written contract provided that if there was a delay in shipping the machinery or articles ordered, plaintiff had no responsibility unless the delays resulted from its own negligence, "and in case of delay on account of such negligence, the reasonable value of the machinery or articles for the time of such delay shall be liquidated damages therefor," and since the contract further provided that if defects were discovered in workmanship or material, the purchaser had the exclusive remedy of returning the defective article to the seller or giving notice of the defect and allowing the seller to correct the same, defendant is bound by these provisions as to the claims made in respect to these two aspects of the case. See Hardie-Tynes Foundry & Machinery Co. v. Glen Allen Oil Mill, 84 Miss. 259, 36 So. 262 (1904); Shields v. Early, 132 Miss. 282, 95 So. 839 (1923); 15 Am.Jur. 671 Damages §§ 240, 256 and 261; and 25 C.J.S. Damages § 115c, p. 696.

In sum, since the written contract documents are clear and unambiguous and no breach thereof on the part of plaintiff has been shown, it necessarily follows that defendant's motion with respect to Count I for summary judgment must and will be overruled and plaintiff's alternative motion for summary judgment should and will be sustained to the extent of the aforestated unpaid contract price, with interest thereon as provided in the contract, at the rate of six percent per annum from and after September 1, 1962. However, the contract provides for payment by defendant to plaintiff of a reasonable attorneys' fee in the circumstances of this case and no evidence has been offered in connection with these motions bearing on this question. Thus, since there is no rule of this court by which such an amount could be fixed and determined, that question will be reserved for later determination.

## II.

■ Count II of the complaint is a suit on what is claimed to be an open account owed by defendant to plaintiff for sales made to him outside of or in addition to the contract dealt with heretofore. The amount claimed by plaintiff by its itemized account which is supported by affidavit is $23,978.28. The defense is three-fold. First, defendant says nothing is due plaintiff because of the breach of the claimed oral contract which has heretofore been discussed in dealing with Count I of the complaint. Second, by affidavit defendant specifically denies items of the account totaling $9,326.60. Third, defendant says that as to an item of $7,373.00 which is referred to as property "on a machinery tested in the field basis" that no agreement was ever made to purchase this machinery.

As to the defense predicated on the claimed oral agreement, in the light of what has been said in part I of this opinion, this defense is untenable and avails defendant nothing.

There are sharp issues of fact which can be resolved only with a full hearing as to the items which are specifically denied by defendant's affidavit amounting to $9,326.60.

With defendant's denial that the $7,337.00 item was ever purchased and the fact that the terms and conditions of this transaction are not resolved or attempted to be shown by the record here, final determination must await a full hearing on the merits. Giles v. Phillips, 238 Miss. 528, 119 So.2d 349 (1960), relied on by plaintiff, has no application here. It dealt with retention and use of defective merchandise by the *purchaser*. Defendant here claims there was no purchase.

However, there is no dispute as to any material fact with respect to the remaining $7,278.68 of the account in suit in Count II, and plaintiff is entitled to judgment to that extent as a matter of law. Rule 56(d), Federal Rules of Civil Procedure. Judgment will be entered for plaintiff to that extent only on Count II, with statutory interest, and the defendant's motion for summary judgment will be overruled in all its aspects. All

other aspects of this count will be for determination after a full hearing.

### III.

Turning now to the counterclaim of defendant, all of the elements of damage claimed therein are in the teeth of the written contract dealt with in part I of this opinion. These asserted elements of damage are loss of profits, additional operating expense, and extra erection and installation expense. Inasmuch as the clear language of the written contract places distinct boundaries on any and all of plaintiff's liability under that contract, defendant cannot maintain this action for the claimed elements of damage.

With respect to this counterclaim, it therefore follows that plaintiff's motion for summary judgment should and will be sustained and defendant's similar motion will be overruled.

An order will be entered in accordance with this opinion.