281 So.2d 683 (1973)
DELTA WILD LIFE & FORESTRY, INC.
v.
BEAR KELSO PLANTATION, INC.
No. 47142.
Supreme Court of Mississippi.
May 28, 1973.
Rehearing Denied September 11, 1973.
Brunini, Grantham, Grower & Hewes, William Timothy Jones, Jackson, Brunini, Everett, Beanland & Wheeless, Vicksburg, Carlton & Henderson, Sumner, for appellant.
Teller, Biedenharn & Rogers, Vicksburg, for appellee.
WALKER, Justice:
This is an appeal from a final decree of the Chancery Court of Issaquena County dismissing appellant's bill of complaint which had sought, among other things, to remove clouds on 1,240 acres of land owned by it.
We affirm.
Delta Wild Life & Forestry, Inc., referred to as Delta, an incorporated hunting club, owns 20,000 acres of deer hunting lands in Issaquena County, Mississippi.
The appellee, Bear Kelso Plantation, Inc., referred to as Bear Kelso, is the holder of a lease covering 1,240 acres of Delta's land. The lease, originally entered into by Delta, lessor, and G.L. Johnson, lessee, on August 21, 1962, provided for annual rental payments of $2,500 per year and was for an initial five-year period *684 with the privilege of lessee to renew same for four successive five-year periods at a rental of $2,500 per year. It also provided that if any of the described premises should, during the term of the contract or any renewal thereof, be assessed for ad valorem taxes at a value "in excess of that at which uncultivatable land in Issaquena County is assessed" that the lessee, in addition to the annual rental specified, would pay the increase in ad valorem taxes thereby imposed as additional rental. (Emphasis added).
Said lease also provided, among other things, that:
LESSEE shall have the right and privilege to put any part or all of said land in pasture, and to erect such fences or other improvements thereon as Lessee may need in and about such operations, and may remove at Lessees [sic] option such fences or improvements at the termination hereof.
At the time G.L. Johnson entered into the above mentioned lease, he and his brother, Wendell Johnson, were partners in a vast agricultural operation throughout Issaquena, Sharkey and Warren Counties. As a part of these operations, they were raising cattle on what was described by the witnesses as woods pasture. After leasing the 1,240 acres in question, they fenced these lands and ran cattle thereon until sometime prior to the middle of 1964 by which time they had sold all of the cattle. During this same period, beginning in 1963, the Johnsons began to clear all of the trees and buck vines from the leased lands and converted them into cultivated row crop lands for the purpose of growing soybeans. Prior to being cleared, a large portion of the land was covered with timber, the value of which was estimated at some $23,370. It was estimated that the cost of clearing the land would run between $75 and $90 per acre, and that the total cost of drainage structures was approximately $30,000. The total of this being well in excess of $100,000. The clearing of the land came to the attention of Delta through its members as early as 1963 or 1964 and a meeting of the Delta Wild Life Corporation was had at which the problem was discussed. Later, in 1965, G.L. Johnson made a request of Delta that he be permitted to sublet the land, which request was denied as evidenced by the minutes of the stockholders' meeting of Delta Wild Life dated August 17, 1965, wherein it is stated:
Norman Weathersby read a letter from Dr. Johnson [G.L. Johnson] requesting that the provision in his lease contract restricting subleasing be eliminated. On motion by Dr. Otkin seconded by Phil Thornton said request was denied. Mr. Smith quoted that Dr. Johnson [G.L. Johnson], in some respects, in his opinion violated some of the provisions of his lease contract. On motion of Dr. Otkin seconded by Phil H. Thornton it was ordered that Mr. M.L. Smith be authorized to confer with an attorney and employ him to take such action as may be necessary with reference to such violations.
Although the minutes authorized M.L. Smith to confer with and employ an attorney to take such action as necessary with reference to the alleged violations, no action was immediately taken and Delta continued to accept the $2,500 annual rental on the 1,240 acres through 1968.
It was also shown that Delta "saw the light," as one witness put it, after observing the Johnsons' successful soybean operations. Thereafter, by a second lease, Delta cleared and leased to Johnson additional acres known as the "thousand acre deadening," being between 1,000 and 1,200 acres. This second lease to the Johnsons did not prohibit a sublease and they sublet it in part to Claude Cook and in part to W.L. and Lee Braxton. On January 10, 1967, when the second lease had about four years to run, Delta decided after negotiations to allow the Johnsons to sublease the disputed 1962 lease on certain conditions. *685 Delta's corporate minutes of that date provide:
BOARD OF DIRECTORS JANUARY 10, 1967
1. RESOLVED, on motion of Jerry Falls, seconded by W.C. Luckett, that
(a) Delta Wild Life obtain cancellation of that certain one-year lease from Delta Wild Life to G.L. Johnson and Wendell Johnson covering all newly cleared lands of Delta Wild Life lying north of the P.H. Thornton Camp  Valley Park Road, and
(b) immediately upon obtaining said cancellation of lease the aforesaid land now covered by the aforesaid lease to G.L. Johnson and Wendell Johnson be leased by Delta Wild Life to the Braxton Brothers and Claude Cook for the remainder of the primary term of the aforesaid current lease to G.L. and Wendell Johnson. The terms of such lease to Braxton Brothers and Claude Cook shall be identical in all respects, word for word, with the term of the aforesaid current lease now held by G.L. and Wendell Johnson, included but not limited to acreage rental and option to renew as specified therein.
2. RESOLVED, on motion of Jerry Falls, seconded by W.C. Luckett, that if but not until all the matters set forth in Paragraph One hereinabove are successfully concluded as specified therein, then but only in that event, Delta Wild Life shall amend that certain written lease from Delta Wild Life to G.L. Johnson and Wendell Johnson covering all these portions of Sections 17, 18 and 20, Township 9 North, Range 6 West, Issaquena County, Mississippi, now under a four strand wire fence, and being all of Section 17, 80 acres more or less in Section 18, and the cleared part of Section 20, so as to grant the said G.L. and Wendell Johnson the right to sublease said premises, provided said premises be kept in a good state of cultivation and properly formed by the sublessee. (Emphasis added).
The agreement to allow the Johnsons to sublease the land in controversy was executed by Delta's President, M.L. Smith, and Norman Weathersby, Secretary, and dated March 22, 1967. However, this supplemental agreement was not delivered until April 10, 1967, when it was acknowledged before the Chancery Clerk of Issaquena County. At the time of the delivery and simultaneously therewith, Delta received a cancellation of the lease made to the Johnsons on January 1, 1966, covering the so-called "thousand acre deadening," and obtained new leases "for agriculture purposes only" from Cook and the Braxtons to same, all resulting in a profit to Delta of $2,500 per year.
On August 11, 1967, G.L. "Doc" Johnson advised Delta by letter that he was exercising his option to renew the disputed 1962 lease for an additional five years and enclosed his check in the amount of $2,500 which check was accepted and cashed by Delta. Thereafter, the 1968 annual rental was paid and the check therefor was deposited to Delta's account on August 16, 1968.
G.L. "Doc" Johnson died on November 4, 1968, and on November 19, 1968, Wendell H. Johnson, his partner, and Mrs. Jeryl T. Johnson, his widow and sole devisee and legatee, quitclaimed to the appellee, Bear Kelso, their rights as lessee to the 1962 lease in question. Agricultural operations continued as usual on the leased properties. Then, on August 19, 1969, Delta forwarded to Bear Kelso a notice to quit on the 1962 lease, giving a number of reasons why the lease had been breached. The appellee, Bear Kelso, refused to quit the leased land and has remained in possession and continued to row crop its property until the present. Suit was filed on August 26, 1971.
As appellant points out, the primary question presented on this appeal is the *686 construction to be given the "lease and option to purchase" dated August 21, 1962, between Delta as lessor and G.L. Johnson as lessee. Appellant argues three points in its brief:
(1) The "pasturage clause" in the lease was mutually intended to govern the use of the 1,240 acres;
(2) The 1962 lease has not been renewed; and
(3) Even assuming a renewal, the lease was properly terminated on August 19, 1969, under the termination clause for failure to pay all annual rental.
We will hereinafter discuss Point 1; however, after thorough consideration, we find that Points 2 and 3 are without merit and warrant no discussion.
The rule is well settled that where a contract is ambiguous, the Court may look to the construction which the parties have placed upon it in order to ascertain its true meaning. What the parties to a contract consistently do thereunder is evidence of what the contract between them required that they should do. Goldberg v. L.H. Realty Corp., 227 Miss. 345, 86 So.2d 326 (1956).
It is undisputed that in early 1963 the Johnsons began clearing the land in question at considerable expense to themselves and that this was known by officers of Delta and that virtually all of the clearing had been completed in 1964. With this knowledge, Delta accepted the annual rental payments each year, and in 1967, after negotiations, the Johnsons were allowed to sublet and assign the questioned lease, and speaking through its minutes, Delta expected, among other things, that the leased premises "be kept in a good state of cultivation and properly farmed." Such a provision is wholly inconsistent with Delta's present contention that the land was to be used for pasture only. Further, Delta's agreement to allow the Johnsons to sublease the property was granted only after the Johnsons agreed to give up valuable leases that they had on other properties belonging to Delta and which Delta immediately released to third parties at a considerable profit. If a bona fide serious dispute existed between the parties as to the interpretation of the lease then certainly it would have manifested itself in the terms of this new agreement. Also, the satisfaction of Delta with the arrangement between the parties, which had been going on for several years, was further evidenced by the acceptance by Delta, without protest, in 1967 of a notice by Johnson of renewal of the lease for an additional five years and the acceptance of the annual rental payment of $2,500 at that time and again in 1968. It was not until August, 1969, after G.L. Johnson died and after the lease had been quitclaimed to Bear Kelso that Delta decided that the Johnsons had breached the lease. This decision comes too late. The contemporaneous construction placed upon the instrument by the parties thereto is entitled to very great weight in reaching the intent and purpose of the instrument. Spengler v. Stiles-Tull Lumber Co., 94 Miss. 780, 48 So. 966 (1909). It is evident from the acts of the parties themselves covering many years that they contemplated that these lands covered by the 1962 lease would be converted to row crop use. The lease itself provided that the lessee would pay any increase in taxes resulting from an assessment of taxes in excess of that at which uncultivated land in Issaquena County is assessed.
We have concluded that the "pasturage clause" which provides that "LESSEE shall have the right and privilege to put any part or all of said land in pasture, and to erect such fences or other improvements thereon ..." is to be regarded as permissive and not restrictive. (Emphasis added). As a general rule it may be said that a tenant is entitled to use leased premises for any lawful or valid purpose, without interference on the part of the landlord, so long as such use is not forbidden by any express provision of the *687 lease or by some necessarily implied construction of the instrument. See annotations at 148 A.L.R. 585-87 (1944). This Court said in Frederic v. Merchants & Marine Bank, 200 Miss. 755, 766, 28 So.2d 843, 847 (1947):
Restrictions intended to limit the use of property to a particular purpose should not be left to implication, but should be clearly defined and understood by the parties.
The appellant contends that their proffer of proof with respect to the negotiations leading up to the execution of the lease should have been admitted into evidence and considered by the chancellor in determining the intention of the parties, and that such proffer indicates that the land was to be used for pasture only. Assuming that such is the case, we must point out that seven years elapsed from the execution of the lease until Delta served Bear Kelso with a notice to quit the leased land. In a proper case, perhaps, such negotiations would be helpful in construing an ambiguous lease or portions thereof in order to arrive at the intent of the parties. But, we do not feel that it would be helpful in this instance for the reason that the parties themselves, over a seven-year period, have placed their own interpretation upon the terms thereof and the rights conveyed therein.
Although we do not agree with the chancellor that the lease is without ambiguity, we, nevertheless, find that he reached the proper result.
The judgment of the lower court is affirmed.
Affirmed.
GILLESPIE, C.J., and INZER, SUGG and BROOM, JJ., concur.