Max Ewing has appealed a final judgment of the chancery court of Lafayette County that he had waived his lessor's right to restrict the use of his property by the lessees to a drive-in movie business. We address the restrictions of a lease clause "to be used as a drive-in movie theater," and find that, while not restricting the use of the property to that particular purpose, neither does it mean that the lessee has a completely unrestricted right of business use of the property. We also find Ewing did not waive his contractual right under the facts. Accordingly, we reverse and remand.
 FACTS
On December 12, 1951, W.H. McNeely, owner of five acres of open land on the north side of Highway 6, and just west of the corporate limits of Oxford at the time, entered into a long-term lease contract of the realty with J.F. and J.R. Adams.
The contract, after a metes and bounds description, recites the property as "being the land upon which is located the drive-in movie theater. . . ."
The term of the lease is five years, beginning March 1, 1952, at a yearly rent of $1,200 payable in equal monthly installments in advance. The lease gives the lessees (party of the second part) the option to renew over successive five-year periods up to 75 years:
 It is mutually agreed that the said parties of the second part shall have the option of successive renewals of this lease of terms of five years each up to seventy five years, provided the said parties of the second part shall give to the said party of the first part 60 days' written notice previous to the expiration to date of each five year term of their election to renew the same.
The contract contains covenants by the lessees to pay the rent when due, and "[T]he said parties of the second part, will not occupy or use or permit to be occupied or used, the said premises for any business deemed unlawful."
The contract contains the following provisions as to the use and occupancy of the premises:
 The said premises are demised and leased by said party of the first part to the said parties of the second part to be used for a drive-in-movie-theater, with the privilege upon the part of the said parties of the second part to erect, or construct on the premises before mentioned *Page 1366 
at their expense such structures and buildings commonly used in connection with the business aforesaid, and incidental thereto.
 * * * * * *
 The said parties of the second part is hereby given the right, easement or privilege to construct and maintain a gas line on, over, through, and across party of the first part's land adjoining the premises aforesaid for the purpose of supplying the premises aforesaid with natural gas.
As to the covenants the contract recites that "the covenants and agreements herein contained are binding on the parties hereto, their heirs, legal representatives and assigns."
On September 16, 1967, McNeely and Lessor executed an extension lease contract on this realty with J.R. Adams, Mr. J.F. Adams and J.R. Adams, Jr., as Lessees. It contains essentially the same provisions as the first lease. The rent is the same, and it contains the same covenants by the Lessees as to paying the rent when due and not to use the premises for any "business deemed unlawful." The lease period begins as of March 1, 1967, for a five-year period, renewable in successive five-year periods, up to 65 years.
The lease contract also has the following provisions as to the Lessor's covenants and the use of the property:
 And the said LESSOR covenants with the said LESSEES that the said LESSEES, on paying the said yearly rent and performing the said covenants on their part, shall and may peaceably and quietly have, hold, and enjoy the demised premises during the term aforesaid.
 The said premises are demised and leased by said LESSOR to the said LESSEES to be used for a drive-in-movie theatre, with the privilege of the LESSEES to erect, or construct on the premises before mentioned at their expense, such structures and buildings commonly used in connection with the business aforesaid, and incidental thereto.
 It is agreed that upon the termination of this lease or renewal thereof, the said LESSEES shall have the right to remove from said premises such structures and buildings so erected or constructed thereon, including their equipment, provided that in so doing they will not seriously injure or damage the land aforesaid.
 It is agreed and understood by the parties hereto, that if the drainage ditches on the adjoining land are not adequate to drain the premises aforesaid, the said LESSEES at their own expense may widen them so that adequate drainage will be provided.
On August 20, 1970, McNeely as Lessor executed an Agreement with Martin Theatres of Alabama, Inc., as "Sub-Lessee" and assignee of the Adamses, extending the previous lease for a five-year period ending August 31, 1977, with options to renew for successive five-year periods up to 60 years following August 31, 1977.
On February 6, 1973, McNeely by warranty deed conveyed the five-acre tract along with other realty to Max Ewing, subject, however, to the above lease contracts.
On June 26, 1986, James F. Adams, Jesse R. Adams, Jr., and John H. Thames, Jr., filed a complaint in the chancery court of Lafayette County against Max Ewing claiming there was a dispute between the parties as to whether the plaintiffs were restricted to using the property as a drive-in movie theater and seeking a declaratory judgment that "the defendant has no right to restrict the plaintiffs' use."
On August 25, 1986, Ewing filed an answer and counterclaim to the complaint, in his answer claiming the property was restricted to use as a drive-in movie theatre, and joining in the prayer for a declaratory judgment, but that the judgment be precisely opposite of the plaintiffs' prayer. The counterclaim alleged that the plaintiffs had used the property for flea markets and other unauthorized uses, had not kept the property in reasonable repair and had abandoned the property, and the property was an eyesore to the community. For these alleged breaches Ewing claimed he was entitled to possess the property.
On November 28, 1986, the Adamses moved for a declaratory judgment that *Page 1367 
they had unrestricted use of the property. The chancellor treated the motion as one for summary judgment. The parties stipulated that the premises had been used for other purposes than a drive-in movie and that the lessor had continued to accept rental checks. On February 2, 1987, Ewing also moved for a summary judgment. On June 26, 1987, the chancellor rendered an opinion that by the terms of the lease the property was restricted to use as a movie drive-in theater.
On July 6, 1987, the Adamses filed a motion with the court to reconsider, and that testimony as to the intent of the parties should be permitted.
On August 12, 1987, the chancery court found that it was the intent of the parties that the property be used solely for a drive-in theater, and granted partial summary judgment to the defendants declaring that the lease "unequivocally restricts the use of the property described therein to the operation of a drive-in movie theatre. The provisions of the lease applicable thereto clearly constitute a restrictive covenant."
On November 9, 1987, a hearing was held before the chancellor on whether Ewing had waived his contractual right. J.R. Adams, Sr., testified that McNeely's attorney drafted the contract in 1951, and that it was his understanding the property could be used for any lawful purpose. Ewing testified that the property ceased being used as a drive-in theater in 1978, had not been tended to, and was grown up in bushes and weeds. In 1980 or 1981 the property had been used for a flea market, and upon another occasion for a "beer bust." The record is not clear as to how often any flea markets occurred. Ewing said it happened "two or three times." He had notified his attorney to write a letter complaining of this use of the property. There was a letter written by Barrett J. Clisby, dated May 29, 1980, to Jesse Roland Adams, objecting to use of the property as a flea market, and informing him that if it was repeated legal action would be taken. Ewing also testified that there had been occasions when the Adamses' rent payment checks were returned due to insufficient funds.
The chancellor rendered an opinion that Ewing had waived his right to cancel the contract or restrict the use of the property to a drive-in movie theater by failing to file a lawsuit following its use as a flea market and as a beer bust. He then held that the Adamses had unrestricted use of the realty.
Ewing has appealed.
 LAW
The first inquiry is what restriction, if any, does the lease impose upon the use of the property? The Adamses claim none, Ewing claims total. We conclude that neither is correct.
In Delta Wild Life F., Inc. v. Bear Kelso Plant., Inc.,281 So.2d 683 (Miss. 1973), this Court addressed the question of whether a lease of unimproved wooded land for pasture purposes, and to erect fences or other improvements thereon as "Lessee may need in and about such operations," restricted use of the land to pasture purposes, or could the lessee clear the land, cultivate it and use it for row crops. We then held:
 We have concluded that the "pasture clause" which provides that "LESSEE shall have the right and privilege to put any part or all of said land in pasture, and to erect such fences or other improvements thereon . . ." is to be regarded as permissive and not restrictive. (Emphasis added). As a general rule it may be said that a tenant is entitled to use leased premises for any lawful or valid purpose, without interference on the part of the landlord, so long as such use is not forbidden by any express provision of the lease or by some necessarily implied construction of the instruction. See annotations at 148 A.L.R. 585-87 (1944). This Court said in Frederic v. Merchants Marine Bank, 200 Miss. 755, 766, 28 So.2d 843, 847 (1947):
 Restrictions intended to limit the use of property to a particular purpose should not be left to implication, but *Page 1368 
should be clearly defined and understood by the parties.
 [Emphasis original]
281 So.2d at 687.
In Forman v. United States, 767 F.2d 875 (Fed. Cir. 1985), the owners leased a building to the Federal Government "to be used for postal purposes." The lease authorized the Government to sublet or assign all or a part of the premises, "but shall not be relieved from any obligation under this lease by reason of any such subletting or assignment." The postal service sublet a part of the building to a realtor, attorneys, a secretarial service, and other private businesses. The landlords claimed the subletting was restricted to governmental agencies. The court disagreed, and clearly illustrated the general principle.
 As a start, we note that (absent a valid restriction) a tenant may put the leased premises to whatever lawful purpose it so desires consistent with the design and construction of the property. R. Schoshinski, American Law of Landlord Tenant, § 5:6 (1980). The landlord is free to impose the restrictions on the tenant's use of the property, but in light of the principle which gives the tenant free use, any restrictions are construed narrowly against the landlord. "Because the lessee stands in the position of an owner in fee with regards to rights of user . . . the lessee's right of the use are [sic] strictly construed against the landlord where there is any ambiguity." 1 American Law of Property § 3.40 (A. Casner ed. 1950). Applied to the specific instance in which a lease provision sets forth the use of the property, the authorities are in agreement that such a provision, absent a clear and specific indication that the landlord intended to limit the tenant's use of the property, is generally permissive and not restrictive. That is, it indicates that the landlord is aware of and sanctions the tenant's intended use, but does not limit tenant to that use alone. [citations omitted]
 A recent Wisconsin case, Rapids Associates v. Shopko Stores, Inc., 96 Wis.2d 516, 292 N.W.2d 668
(1980), presented a situation identical in pertinent respects to the one we have here. The landlord leased the property "for the purpose of conducting a retail department store." The tenant sought to sublet the property to another business. The court held that the language in the lease did not prohibit the sublease:
 While this clause does describe [tenant's] intended use of the premises, it does not contain terms of restriction prohibiting uses other than a retail, discount department store. Generally, absent express restrictive terms, such descriptive clauses are merely permissive in nature and do not restrict lessee's use of the premises.
 292 N.W.2d at 670 (footnote omitted). The court also noted that, had the parties intended the lease to restrict the tenant's use of the premises, "they could have inserted simple words of limitation." Id.
 Based on this accepted principle, we hold that paragraph 2 of the Postal Service's lease with the Formans describes the Postal Service's intended use of the property and does not limit the other uses to which the Postal Service or its sublessees (as authorized by paragraph 8 of the lease) may put the property. The lease simply does not say that use for postal purposes is the only use, and there is no ground for implying such a narrowing limitation. [Emphasis original]
767 F.2d at 880-881. Also, 49 Am.Jur.2d Landlord and Tenant § 240 (1970) and cases annotated.
We must hold, therefore, that the chancellor erred in his holding that the words "to be used for a drive-in movie theater" restricted the lessees' use of the property to this sole purpose.
We likewise find that the chancellor erred in his conclusion that Ewing had waived his rights under the lease. In PlantersBank Trust Co. v. Sklar, 555 So.2d 1024, 1031 (Miss. 1990), we noted that because the existence vel non of a waiver "was a factual determination, this Court's *Page 1369 
scope of review is limited and governed by the manifest error/substantial evidence standard." In this case the variance in use consisted of a very few isolated instances, and Ewing protested. The fact that he filed no lawsuit to protect whatever rights the lease gave him did not in law constitute waiver. There was no consistent pattern of varied uses of the property, or persistent use for other purposes than a drive-in. Far more sustained passivity by Ewing would have been required to constitute a waiver. In Campbell Paint Varnish Co. v. Hall,131 Miss. 671, 687, 95 So. 641, 644, 49 Am.Bankr.Rep. 611 (1923), this Court defined "waiver," as follows:
. . . to mean the relinquishment of a known right, with knowledge of the existence of such right and a purpose to relinquish it. Mere silence on the part of the seller is not sufficient to constitute a waiver, unless such silence exists under circumstances when the seller is called on to speak.
Ballentine's Law Dictionary 1356 (3rd ed. 1969) gives the following helpful definitions of "waiver":
 Waiver presupposes a full knowledge of a right existing, and an intentional surrender or relinquishment of that right. It contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and conditions of a contract. It is the voluntary surrender of a right. Sovereign Camp, W.W. v. Newsom, 142 Ark. 132, 219 S.W. 759, 14 ALR 903.
 To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived. Dunbar v Farnum, 109 Vt. 313, 196 A 237, 114 ALR 996.
In this case there was nothing about Ewing's conduct to fairly evidence any intention to waive whatever rights he had under the lease to restrict the use of the property. Matheney v. McClain,248 Miss. 842, 161 So.2d 516 (1964). We therefore find the chancellor manifestly in error in concluding there was a waiver on Ewing's part.
Then are the words "to be used for a drive-in theater" no restriction whatever on the lessees' use of the property? No. 51C C.J.S. Landlord and Tenant § 337, p. 861, after setting for the general law above noted, states further:
 In other words, a covenant that premises shall be used for a specified purpose does not impliedly forbid their use for a similar lawful purpose which is not injurious to the rights of the landlord.
[Emphasis added]
Also, 49 Am.Jur.2d § 240, pp. 256-257, states that words descriptive of the use of the premises cannot be construed as restricting the lessee "to the distinctive use which the words may suggest. They will not be construed, at the instance of the lessor, as proscribing the use of the premises for somethingsimilar or related to the designated purpose." [Emphasisadded]
In Bevy's Dry Cleaners Shirt Laundry, Inc. v. Streble,2 Ohio St.2d 250, 208 N.E.2d 528 (1965), a landlord dry cleaning business leased adjacent premises to carry on a "general laundry business," and coin-operated laundry machines. Thereafter, the lessee installed some coin-operated dry cleaning machines. In holding the lease did not preclude the use of the premises for dry cleaning, the Ohio Supreme Court held:
 It is arguable, of course, that to hold descriptive words as not prohibitive of other uses is to render them meaningless and without effect. However, it is not unreasonable to assume that by failing to insist upon express words of proscription, lessors' purpose was merely to define the general scope of the use to which the premises may be put.
 We go no further than to hold that uses similar or related to the general scope of the described use will not be prohibited as between the lessor and the lessee. We cannot speculate on a solution to the problem presented if, for example, Speedi elects to operate on its premises a foundry, slaughterhouse or some other instrumentality inconsistent with the type of construction, the character *Page 1370 
of the building or the adjacent properties.
2 Ohio St.2d at 254, 208 N.E.2d at 532.
Neither in this case can we go further than the above announcement. The Adamses sought a declaratory judgment for unrestricted use of the land. The Adamses did not seek a declaratory judgment to authorize some particular variant use of the property. Instead, they sought declaratory judgment for completely unrestricted business use, so long as it was lawful. On the other hand, Ewing sought a declaratory judgment restricting the Adamses solely to a drive-in movie theater, now obsolete businesses in this state. As we have noted, neither extreme position is correct. The answer lies somewhere between.
If the Adamses by proper pleading amendment set forth specifically the variance or variances in use they seek, then proceedings shall be conducted consistent with our holding. Without any further amendment within a reasonably short time upon remand, this case should be dismissed.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., and ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
BLASS, J., DAN M. LEE, P.J., and PRATHER, J., dissent.