# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 16, 2008

Charles R. Fulbruge III
Clerk

No. 07-50088

F. CARY FITCH, doing business as Affordable Telecom,

Plaintiff-Appellant,

v.

PUBLIC UTILITY COMMISSION OF TEXAS; SOUTHWESTERN BELL
TELEPHONE COMPANY, doing business as AT&T Texas,

Defendants-Appellees.

F. CARY FITCH, doing business as Affordable Telecom,

Plaintiff-Appellant,

v.

PAUL HUDSON, in his individual and official capacity; JULIE
CARRUTHERS PARSLEY, in her individual and official capacity; BARRY
SMITHERMAN, in his individual and official capacity; TEXAS PUBLIC
UTILITY COMMISSION,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:06-CV-176

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Affordable Telecom ("Affordable") appeals from the district court's order affirming the Texas Public Utility Commission's ("PUCT") approval of an arbitrated interconnection agreement between Affordable and Southwestern Bell Telephone Company (hereinafter "AT&T Texas"). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Affordable, a small telecommunications company that provides paging service and Internet access, received commercial mobile radio service ("CMRS") licenses from the Federal Communications Commission ("FCC") to provide interconnected common carrier paging services to the public in Corpus Christi and Victoria, Texas. In order to effectuate the services provided by the licenses, Affordable had to enter into an interconnection agreement with AT&T Texas. The Telecommunications Act of 1996 ("FTA"), Pub. L. No. 104-104, 110 Stat. 56 (1996), codified at 47 U.S.C. § 151 et seq., which was adopted to encourage the entry of new telecommunications carriers into local service markets, allows competing local exchange carriers ("CLECs") to negotiate interconnection agreements with incumbent local exchange carriers ("ILECs"). However, the FCC has also stipulated that ILECs cannot charge for the use of interconnection facilities for services that do not originate traffic, such as one-way paging. Since Affordable's licenses were for paging services which do not originate any traffic, it was not obligated to provide AT&T Texas any compensation under the terms of the licenses.

The case below began in 2004 as a compulsory arbitration before the PUCT, see 47 U.S.C. § 252, when Affordable and AT&T failed to reach a voluntary agreement on all terms. The central issue in contention before the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

PUCT arbitrators was whether Affordable was legally authorized to avoid payment for the business lines and equipment it had access to through its interconnection agreement with AT&T Texas even though Affordable had used its interconnection agreement to provide dial-up Internet access to its customers.

In rendering their decision, the PUCT arbitrators made a number of factual findings. The PUCT arbitrators determined that Affordable had approximately 5,000 dial-up Internet access customers (through the trade name USAWIDE.net), 200-300 resold numeric paging customers, and 15 Superpaging[1] customers, and they concluded that although Affordable's licenses only allowed it to provide paging services, the majority of the traffic carried over its existing interconnection arrangements was dial-up internet service provider ("ISP") traffic.[2] Relying on the FCC rule laid out in 47 C.F.R. § 51.100(b),[3] the PUCT

---

[1] Superpaging employs the paging spectrum to transmit "pages" to subscribers' wireless receivers. The page can consist of any type of data that can be sent to a computer (not just phone numbers as with traditional paging). Additionally, the calling party can, if it subscribes to such function, use the Internet to gather information for transmission in the Superpage. In fact, the PUCT arbitrators found that Affordable's dial-up Internet access service subscribers could access the Internet by calling the same platform used to initiate Superpages.

[2] According to AT&T Texas, 99% of Affordable's traffic was dial-up ISP traffic.

[3] 47 C.F.R. § 51.100(b) states:

> A telecommunications carrier that has interconnected or gained access under Sections 251(a)(1), 251(c)(2), 251(c)(3) of the Act, may offer information services through the same arrangement, so long as it is offering telecommunications services through the same arrangement as well.

Telecommunications service means "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." 47 U.S.C. § 153(46). Telecommunications is defined as "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(43). An information service offers the capability for "generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications," but does not include providing telecommunications itself. 47 U.S.C. § 153(20).

arbitrators held that Affordable could not use the interconnection facilities to carry Internet access traffic because Affordable does not offer telecommunications service "through" interconnection facilities; rather, it merely transmits radio signals to activate its pagers. The PUCT arbitrators explained that "47 C.F.R. § 51.100(b) allows the offering of information service through an interconnection facility, but only as an incident to the telecommunications service for which the carrier obtained the interconnection facility." The PUCT arbitrators concluded that Affordable is only authorized to provide paging services, and "consequently [it] may not receive any traffic other than paging traffic through the interconnection facility."[4]

On June 29, 2005, the parties filed exceptions to the PUCT arbitrators' award proposal. The PUCT approved the arbitration award, making only one modification.[5]

Affordable filed suit in state court, challenging the PUCT's award and its conclusion that Affordable is not entitled to continue providing internet services through its interconnection agreement with AT&T.[6] The case was removed to federal district court by the PUCT Defendants and AT&T Texas (collectively "Defendants"), on the grounds that the case involved federal questions. The district court denied Affordable's motion to remand and ordered Affordable to

---

[4] The arbitrators, in their award, also restricted the services Affordable could provide under its Superpaging services. Additionally, they made findings regarding the compensation rates between Affordable and AT&T Texas under the interconnection agreement.

[5] The PUCT decided that long-distance calls (calls routed through an interexchange carrier) were not subject to the same reciprocal compensation rates as calls not routed through third party interexchange carriers.

[6] Affordable also challenged the PUCT's imposition of sanctions arising out of a discovery dispute. Affordable initially sued the individual PUCT Commissioners for imposing sanctions, but amended its complaint to target the PUCT and the Commissioners in their official capacities.

amend its complaints to address the claims under the FTA.[7] The parties briefed all issues, except Affordable's damages claims against AT&T Texas. On December 12, 2006, the district court entered an order affirming the PUCT order in all respects and ordered that Affordable's damages claim against AT&T be dismissed with prejudice. Affordable timely filed its notice of appeal.

## II. STANDARD OF REVIEW

We review state commission rulings that interpret federal law de novo. Southwestern Bell Tel. Co. v. Pub. Util. Comm'n, 208 F.3d 475, 482 (5th Cir. 2000). Factual findings and state law determinations by state commissions are reviewed "under the more deferential arbitrary and capricious standard." Id. We have previously recognized that there is no meaningful difference between the arbitrary and capricious standard and the "substantial evidence" standard. Id. at 482 n.8 (citing GTE South Inc. v. Morrison, 199 F.3d 733, 745 n.5 (4th Cir. 1999)).

## III. DISCUSSION

First, Affordable contends that the PUCT erred when it refused to arbitrate Affordable's claims under 47 U.S.C. §§ 201, 332(c)(1)(B) and 47 C.F.R. § 20.11. It also asserts that the district court erroneously concluded that § 332 is "outside the scope of an arbitration under § 252." In making this claim, Affordable recognizes that the FCC prefers that LEC-CMRS disputes are handled through the negotiation/arbitration process that was adopted in §§ 251/252 of the 1996 amendments, but Affordable nevertheless asserts that the FCC has also "taken great care to ensure that where § 332 or FCC wireless precedent requires a different substantive result than would the 1996 amendments standing alone, then its CMRS rules prevail."

---

[7] Affordable initially filed two suits in state court—the first one after the PUCT order approving the award with changes and again after the interconnection agreement was filed. The two cases were consolidated and certain state law issues were remanded to state court.

Affordable's argument must fail. The FCC has clearly directed state commissions to arbitrate LEC-CMRS interconnection agreements under §§ 251 and 252, concluding that state commission arbitration proceedings would achieve "just, reasonable, and fair" agreements, which is the "common goal" of §§ 201, 332, 251, and 252. In the Matter of Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, Interconnection Between Local Exchange Carriers and Commercial Mobile Radio Service Providers, First Report and Order, 11 F.C.C.R. 15499, 16005 ¶ 1023 (Aug. 8, 1996).

Second, Affordable argues that the PUCT erroneously held that paging carriers (as contrasted with LECs and cellular carriers) are not allowed to provide both telecommunications and information services under their interconnection agreements with ILECs. Affordable asserts that the FCC has recognized that paging carriers can provide information services, and that the PUCT interpreted 47 C.F.R. § 51.100(b) too narrowly. According to Affordable, the PUCT interpreted the word "through" to mean "in one side and out the opposite," when in the context of § 51.100(b) the word actually means "by the means and agency of." When the proper definition of through is applied, Affordable contends that § 51.100(b) allows it to offer information services through the interconnection agreement it has with AT&T Texas for one-way paging. On the other hand, AT&T Texas and the PUCT Defendants urge this Court to affirm the PUCT award and the district court's determination. They argue that under the proper reading of § 51.100(b), Affordable's licenses permit it to interconnect with AT&T and use AT&T facilities for a limited purpose—to provide one-way paging service—and since § 51.100(b) only permits telecommunications carriers to offer information services "through the same arrangement," Affordable cannot, under its existing one-way paging

interconnection agreement (which just involves receiving information) provide information services (which involves sending and receiving information).

This issue is the heart of this dispute. Affordable believes that the rights it has under its licenses should be interpreted broadly so it can offer a wide range of services via its interconnection agreement with AT&T Texas. AT&T, the PUCT, and the district court all believe that Affordable's licenses only permit it to provide one-way paging. For the following reasons, we hold that the interpretation suggested by Affordable is incorrect.

As the district court recognized, one-way paging is not a service provided "through" an interconnection facility, because the facility is merely relaying a call from the person initiating a page to the paging service provider. The district court cites from the PUCT arbitrators award, where they explain:

> [§ 51.100(b)] does not just require that communications occur through the arrangement. If this were the standard, then all carriers would be able to offer information services through interconnection agreements, since the very purpose of an interconnection agreement is to transit communications. Rather, the carrier must offer telecommunication services through the arrangement.

Affordable argues that the PUCT and the district court unreasonably discriminated by acknowledging differences between CMRS providers (i.e., those that provide telephone exchange service versus those that provide telecommunications services), but Affordable is unable to establish how the PUCT or the district court's interpretations are inconsistent with any FCC decisions or orders issued since the 1996 amendments. Not only is Affordable's argument at odds with the plain language of § 251, but it also goes against the FCC precedent that has recognized the distinctions between different CMRS providers.

Further, common sense demands that we reject Affordable's argument. If its interpretation of § 51.100(b) is correct, it would be able to provide information services without having to pay AT&T Texas anything for using its facilities. This is clearly contrary to FCC precedent, as the FCC has recognized that ISPs are end users of telecommunications services that are required to purchase LEC business lines. In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, 14 F.C.C.R. 3689, 3690 ¶ 4 (1999), vacated on other grounds, Bell Atl. Tel. Co. v. FCC, 204 F.3d 1 (D.C. Cir. 2000).

Third, Affordable asserts that the PUCT erroneously concluded that it was not authorized to provide services to laptop computers and mobile signs through its Superpaging service.[8] The PUCT's determination about which Superpaging services are permitted under Affordable's interconnection agreement is a factual finding. We agree with the PUCT that many of the services Affordable provided under the umbrella of Superpaging, such as information storage and retrieval and access to the Internet, are not CMRS services, and therefore Affordable is not permitted, under § 51.100(b), to provide those services through its interconnection with AT&T Texas. Accordingly, we cannot hold that the PUCT's determination was arbitrary and capricious.

Fourth, Affordable Telecom challenges two of the PUCT rulings regarding intercarrier compensation.[9] First, it asserts that the PUCT violated the FTA

---

[8] Specifically, the PUCT arbitrators found that: "Superpaging only qualifies as CMRS to the extent that it meets the previously outlined definition of paging. Accordingly, the arbitrators conclude that Superpaging qualifies as CMRS only when the end user's wireless receiver meets the FCC's definition of a pager. Among the possible applications cited by Fitch Affordable Telecom, only the Pocket PC fits the definition of pager."

[9] When a call originating from one carrier's customer is made to a customer of another interconnected carrier, the originating carrier must pay the terminating carrier for the costs of transporting and terminating the call. 47 U.S.C. § 251; 47 C.F.R. § 51.701(e). The FCC has established rules that govern these "reciprocal compensation" payments. 47 C.F.R. § 51.701(e); see also 47 C.F.R. § 51.701-.717. In pertinent part, these rules state that CMRS providers may

and FCC rules by failing to establish a rate to be paid for termination of AT&T originated calls. Affordable asserts that under § 251(b)(5), it is entitled to reciprocal compensation for paging, citing to FCC decisions that held that ILECs are required to at least offer to exchange both § 251(b)(5) traffic and ISP-bound traffic at the rate of $0.0007 per minute of use. See Petition of Core Communications, Inc. for Forbearance Under 47 U.S.C. § 160(C) from Application of the ISP Remand Order, 19 F.C.C.R. 20179, 20181 ¶ 6 (2004); see also T-Mobile Order, 20 F.C.C.R. at 4862 ¶ 12; see generally In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996: Intercarrier compensation for ISP-Bound Traffic, 16 F.C.C.R. 9151 (1999). Affordable argues that since AT&T failed to offer a rate during the arbitration before the PUCT, the arbitrators should have prescribed the FCC's $0.0007 compensation rate. However, a review of the record indicates that AT&T Texas inadvertently omitted its pricing index during the PUCT arbitration. When AT&T attempted, by motion, to correct its omission and to provide a reciprocal compensation rate of $0.0013 per minute, Affordable objected, and as a result, AT&T withdrew its motion. AT&T Texas now argues that this classifies as invited error, and assert that because of that, this Court should not reverse the PUCT's determination. See Hidden Oaks Ltd. v. City of Austin, 138 F.3d 1036, 1051 (5th Cir. 1998) ("Having made such a choice at trial, Hidden Oakes hardly can request now that we reverse and remand in order for it to reassess its earlier strategy."). We agree, and as a result, this issue cannot

---

be compensated for terminating calls that originate from customers of the interconnected telecommunications carriers. 47 C.F.R. § 51.701(c) & (e); 47 C.F.R. § 51.701(e). The rules also stipulate that carriers that only provide one-way paging service do not owe reciprocal compensation to LECs.

be raised on appeal.  See Flores v. Cameron County, 92 F.3d 258, 270 (5th Cir. 1996) (explaining that "the invited error doctrine . . . preclude[s] our review").[10]

Affordable next argues that the PUCT order adopting the award erroneously concluded that any reciprocal compensation paid by AT&T Texas to Affordable should be limited to those calls originating within AT&T and terminating directly with Affordable, and in which (i) the originating caller and the recipient are in the same Metropolitan Traffic Area ("MTA") and (ii) no intervening interexchange carrier is involved (i.e., the call is not a long-distance call requiring "1+" dialing.)  Affordable Telecom argues that the PUCT's holding in this regard is at odds with the manner in which federal courts have interpreted this issue.  See e.g., Iowa Network Servs. v. Qwest Corp., 466 F.3d 1091 (8th Cir. 2006); Atlas Tel. Co. v. Oklahoma Corp. Comm'n, 400 F.3d 1256 (10th Cir. 2005).  However, this argument is flawed as well.  As the PUCT Defendants observe in their brief: "It would be entirely incongruous to require AT&T to pay Affordable for a long-distance page originated by a customer using interexchange service, especially considering that AT&T had nothing to do with the termination of the call."  We agree, and the case law cited by Affordable is inapplicable to this case.

Finally, Affordable sued AT&T Texas for damages under 47 U.S.C. §§ 206 & 207,[11] arguing that AT&T violated the FTA by refusing to interconnect with

---

[10]  Even if we were to refrain from classifying it as invited error, we need not reverse the PUCT order on this ground because the PUCT included language in the interconnection agreement that will allow the parties to prospectively include a rate which could be retroactively implemented.  And because AT&T's rate in its withdrawn filing ($0.0013) is higher than the rate Affordable Telecom alleges should have been adopted ($0.0007), the parties should be able to reach an agreement on a appropriate rate for reciprocal compensation without intervention from this Court or the PUCT.

[11] 47 U.S.C. § 206 provides that if common carriers violate any provisions of the TCA they shall be liable for damages sustained in consequences of that violation, along with reasonable attorney's fees.  47 U.S.C. § 207 similarly authorizes any person who claims to be damaged by a common carrier to either file a complaint with the FCC or to bring a lawsuit in federal district court to recover damages.

Affordable and for refusing to negotiate in good faith. Affordable argues that the district court's dismissal of these claims was in err, especially since the court never specifically addressed all of Affordable's allegations. Affordable's argument is without merit. There is no evidence that AT&T Texas violated any provision of the TCA, damaged Affordable in any way, or even acted in bad faith. Therefore, Affordable is not entitled to damages under §§ 206 or 207.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.