# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 19, 2009

Charles R. Fulbruge III
Clerk

No. 08-60984

WANDA JONES,

Plaintiff - Appellant

v.

NORFOLK SOUTHERN COMPANY; RON STOCK,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:07-cv-00513

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Wanda Jones ("Jones") appeals the district court's summary judgment against her. The issues in this appeal are: (1) whether the district court applied the proper test to decide that Norfolk Southern Co. ("Norfolk") was not Jones's joint employer under Title VII, and (2) whether the district court properly granted summary judgment on Jones's tortious interference claim for failing to show Norfolk acted without right or justifiable cause. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Facts and Proceedings Below

The facts of this case, viewed in the light most favorable to Jones as the non-moving party, are as follows. T.V. Minority Company Inc. ("TVM") is a trucking and freight management company based in Taylor, Michigan. Since 1995, TVM has operated as an independent contractor for Norfolk. TVM is responsible for the loading and unloading of automobiles at Norfolk's Meridian, Mississippi facility. The contract governing these operations at Norfolk's facility expressly reserved to Norfolk an absolute right to ban any TVM employee from the premises if, in Norfolk's sole judgment, the employee posed a risk or threat to the safe and efficient operation of the facility.

In 2001, TVM hired Jones as its on-site manager for its operations at Norfolk's Meridian Facility. Jones's position required her to report daily to her supervisor, Gary Locklear ("Locklear"), who was also a TVM employee. Locklear worked out of TVM's offices in Michigan but made periodic visits to the Meridian Facility. Defendant, Ron Stock ("Stock"), was employed as an operations manager by Norfolk. Stock made monthly visits to the Meridian Facility that generally lasted one or two days and during which part of his work day was spent meeting with various employees and contractors around the facility.

Jones claims that Stock harassed her on the bases of gender and religious beliefs during these monthly visits. For example, Jones alleges that Stock made "snide and mocking comments about her religiosity" and instructed a "co-employee to put a Jesus stamp on a document if they wanted [her] to sign it." Jones also alleges that Stock once asked her what her husband had bought her from Victoria's Secret, once informed her he was sleeping on the sofa because his wife was mad at him, and once told employees at a different Norfolk facility that Jones and the manager of another Norfolk tenant "were in bed together."

Jones allegedly complained of this conduct both to Locklear and Stock and threatend to contact the EEOC. The contents of these conversations are

disputed. Jones claimed the conversation was merely "heated." Locklear claimed Jones used extreme profanity and threatened to close the facility if Locklear did not meet her demands. Following this conversation, Locklear drafted two letters of reprimand and sent them to Stock to decide which letter would be given to Jones. The letter Jones ultimately received warned her that her use of extreme profanity in her conversation with Locklear was inappropriate, that threats to close the facility would not be tolerated, and that she had behaved unprofessionally. A short time later, Jones received a second letter from Locklear relieving her of her duties at the Meridian Facility. The letter stated that Jones had been barred from the facility by Norfolk and that TVM would relocate Jones to another facility or accept her resignation. Jones claims this communication constituted a constructive discharge from her employment with TVM.

On August 29, 2007, Jones filed suit in the Southern District of Mississippi against TVM, Norfolk, and Stock, raising claims of discrimination and retaliation in violation of Title VII. Specifically, Jones claimed Norfolk was liable under Title VII as a "joint employer" under the test announced in *North American Soccer League v. NLRB*, 613 F.2d 1379, 1381-83 (5th Cir. 1980) and *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 138-40 (2d Cir. 1985). Jones's claims against TVM were dismissed by agreement, and the remaining defendants then moved for summary judgment, which was granted. This appeal followed.[1]

## II. Standard of Review

A grant of summary judgment is reviewed de novo, applying the same standard as the district court. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th

---

[1] Although the district court granted summary judgment to both Norfolk and Stock, Jones does not raise any issue regarding the summary judgment in Stock's favor. Accordingly, we do not address him separately.

Cir. 2006). The inquiry "is limited to the summary judgment record before the trial court." *Topalian v. Ehrman*, 954 F.2d 1125, 1132 n.10 (5th Cir. 1992). The court must view the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the movant has the burden of showing this court that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bolton*, 472 F.3d at 263; *see* FED. R. CIV. P. 56(c). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. Discussion

### A. "Joint Employer" Status

Jones challenges the test the district court used to address her claim that Norfolk was her joint employer together with TVM. Norfolk argues that Jones invited this error, if any, by directly encouraging the district court to apply the legal test she now claims was inappropriate. In *Munoz v. State Farm Lloyds*, 522 F.3d 568 (5th Cir. 2008), we held that "[t]he invited error doctrine provides that 'a party may not complain on appeal of errors that he himself invited or provoked the court . . . to commit.'" *Id.* at 573 (second alteration in original) (quoting *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993)). Invited error will only be reviewed for manifest injustice. *United States v. Solis*, 299 F.3d 420, 452 (5th Cir. 2002). Though usually applied to evidentiary errors, the doctrine may apply in other contexts where a party affirmatively encourages the court to undertake an act that the party later claims was error. *See, e.g.*, *Flores v. Cameron County*, 92 F.3d 258, 270 n.9 (5th Cir. 1996) (barring appeal of jury instruction where appellant submitted the complained of jury instruction); *Fitch*

*v. Pub. Util. Comm'n*, 261 F. App'x 788, 794 (5th Cir. 2008) (unpublished) (applying doctrine to prevent appeal of a damages formula proffered by appellant in an earlier proceeding). Because Jones argued for application of this test in the district court, Norfolk argues that Jones's appeal of the court's use of the test set forth in *North American Soccer League v. NLRB*, 613 F.2d 1379, 1381-83 (5th Cir. 1980), and *Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132, 138-40 (2d Cir. 1985), for assessing "joint employer" status is waived.

We need not rest our opinion on the doctrine of invited error. Even if we now applied the *Trevino v. Celanese Corp.*, 701 F.2d 397, 403-404 (5th Cir. 1983), test advanced by appellant on appeal, it would not change the outcome. We conclude that Jones has not shown sufficient connection between Norfolk and TVM to meet either test's requirements.[2] Norfolk's "power" over TVM employees was limited to barring TVM employees from the Norfolk facility. This "power" is insufficient to transform Norfolk into Jones's employer for Title VII purposes. Accordingly, the summary judgment on her Title VII claim was proper.

B. Tortious Interference

Jones contends that the district court erred when it granted summary judgment on her tortious interference claim. Under Mississippi law, a claim for tortious interference lies where: "(1) the [defendant's] acts were intentional and willful; (2) . . . they were calculated to cause damages to the plaintiffs in their lawful business; (3) . . . they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) . . . actual loss occurred." *Levens v. Campell*, 733 So. 2d 753, 760-61 (Miss. 1999). It must also be proven that the contract would have been

---

[2] In so holding, we do not pass on which test should apply to the instant case. We merely conclude that any possible error in applying the *North American Soccer League* and *Clinton's Ditch* standard was harmless because neither that standard nor the *Trevino* would allow for the imposition of liability on Norfolk under the facts of this case.

performed but for the alleged interference. *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998). We agree with the district court that Jones failed to raise an issue of material fact as to the third element because Norfolk acted under its rights as a property owner when it excluded her from the Meridian Facility.

Jones argues that "property rights under state law do not trump civil rights under federal law." She then reargues her employment claims.

In *Biglane v. Under the Hill Corp.*, 949 So. 2d 9 (Miss. 2007), the Mississippi Supreme Court held that:

> Ownership of the property is important because it speaks to the third factor of the tort - that the allegedly tortious acts must be performed without right or justifiable cause. It is a basic tenet of property law that a landowner or tenant may use the premises they control in whatever fashion they desire, so long as the law is obeyed.

*Id.* at 16. The court's citation to *Ewing v. Adams*, 573 So. 2d 1364, 1368 (Miss. 1990) clarifies the last clause of this passage. "[S]o long as the law is obeyed" does not mean "so long as exercising the right does not give rise to another, unrelated claim." Instead, as noted in *Ewing*, it means so long as the land itself is being used for a "lawful or valid purpose*." Id.* In this context, the court went on to explain "[g]enerally speaking, it cannot be malicious[3] for a person to refuse access to others to their private property." *Biglane*, 949 So. 2d at 16. Norfolk was not using the land unlawfully–whatever its motivations for excluding Jones–and Jones failed to raise a genuine issue of fact suggesting otherwise. As such, Mississippi law supports the district court's grant of summary judgment.

## IV. Conclusion

The district court's judgment is AFFIRMED.

---

[3] Under Mississippi law, the phrase "without right or justifiable cause" serves as a malice requirement in tortious interference claims. *See Biglane*, 949 So. 2d at 16 (articulating the third element as "without right or justifiable cause on the part of the defendant (which constitutes malice)").